COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Senior Judge Annunziata


AMANDA M. SUTTON

                                                              MEMORANDUM OPINION[*]
v.      Record No. 1567-11-3                                  PER CURIAM
                                                              FEBRUARY 7, 2012
SHENANDOAH VALLEY DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                        Humes J. Franklin, Jr., Judge

            (S. Scott Baker, on brief), for appellant.

            (James B. Glick; Paul A. Titus, Guardian *ad litem* for the minor
            child; Vellines, Cobbs, Goodwin & Glass, P.L.C., on brief),  for
            appellee.


       Amanda M. Sutton (mother) appeals a decision of the circuit court terminating her parental

rights to her child, S.C.  She contends on appeal that the "trial court erred in finding that the

Shenandoah Valley Department of Social Services [(SVDSS)] met its burden by clear and

convincing evidence to terminate [her] residual parental rights."  We disagree with mother and

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                         BACKGROUND

       On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

SVDSS removed the child in February 2009 and placed him in foster care where he has remained. Although the initial goal was to return the child home, SVDSS social worker Allison Straw by letter dated July 15, 2010 indicated that mother "has failed to cooperate with services and has not demonstrated her ability to provide a safe and stable home for the child." As a result, SVDSS filed a petition on July 22, 2010, requesting termination of mother's parental rights.

On May 17, 2011, the trial court conducted a *de novo* hearing on mother's appeal of a decision by the juvenile and domestic relations district court terminating her residual parental rights. A summary of the evidence follows.[1]

Dr. Gerald Showalter evaluated mother. During the evaluation, mother acknowledged giving her child unauthorized prescription drugs. Dr. Showalter diagnosed mother with "paranoia schizophrenia, NOS, together with some certain abnormal personality traits, which he did not believe would change over time."

Martha Sheridan, a therapist with Augusta Behavioral Health, met with mother thirty-three times from February 2009 until June 2010. Sheridan opined that mother made little, if any, progress.

Barbara Finn, a therapist with Augusta Behavioral Health, worked with mother from June 2010 until March 18, 2011, when mother stopped attending. Finn testified that mother made some progress.

Social worker Straw worked with the child and mother, and in February 2009, Straw prepared a foster care plan with an initial goal of "Return Home," which she later changed to adoption. Straw explained that mother was referred to Augusta Psychological Associates, but

---

[1] The facts are from the trial court's detailed letter opinion dated June 6, 2011, the parties' signed statement of facts, and the record on appeal.

she did not succeed in either therapy program and did not follow up with SVDSS. Mother was then referred to Dr. Christian, who referred her to Dr. Robertson, but mother was dismissed from that service for noncompliance. Straw related that mother typically exhibited oppositional traits and on several occasions would become extremely agitated, curse at the doctors and staff, and throw chairs. Mother was then referred to a fifteen-week parenting class, which she completed in January 2010. Mother maintained weekly visits with the child except for June and July of 2009. Straw testified that mother exhibited poor parenting skills in the visits, and at times appeared to be on the verge of crying. At one point, SVDSS allowed mother once-a-month unsupervised visitation. However, it later became necessary to return to supervised visitation. Straw referred mother to the Department of Rehabilitative Services (DRS) in July 2009 and again in September 2009 "to identify the services which were offered," but mother failed to participate. Straw met with mother in July 2010 and emphasized the need for her to obtain and maintain employment. Mother worked at Hardees for a short time until she was terminated, and she later worked for two days in April 2011, until she was terminated. Although mother maintained a regular residence, the environment in the home was unstable due, in part, to her tumultuous relationship with her boyfriend, who lived there "off and on." The relationship involved several incidents of physical abuse. Mother acknowledged giving her son sedatives in the past to keep him "safe from her boyfriend." Straw "testified that the overall situation was a non-cooperative one and that between the ages of four and six years old, the child has been in foster care for over one-third of his life." Mother's failure to successfully address the issues and show improvement after being provided numerous services for an extended period of time caused SVDSS to change the goal to adoption.

Mother testified and acknowledged missing some appointments, but stated that her boyfriend had changed and "they were learning how to cope." She said she was currently unemployed, but was looking for work.

After considering all of the evidence, the trial court found that SVDSS proved by clear and convincing evidence that without good cause, mother has been unwilling or unable within a reasonable period of time to remedy substantially the conditions that brought the child into foster care, notwithstanding the reasonable and appropriate efforts and resources provided by SVDSS, and it is in the best interests of the child that mother's residual parental rights be terminated.

DISCUSSION

Mother's counsel endorsed the court's July 15, 2011 order "SEEN AND OBJECTED TO:" and did not particularize any basis for her objection. In lieu of a transcript, the parties submitted an agreed written statement of facts pursuant to Rule 5A:8(c). The statement of facts did not recite mother's arguments, if any, or any objections she made to the trial court's rulings.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated together with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

> The purpose of the rule is to allow the trial court to cure any error called to its attention, thereby avoiding unnecessary appeals and retrials. See, e.g., Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc). Ordinarily, endorsement of an order "Seen and objected to" is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error. See id. at 515, 404 S.E.2d at 738. Such an endorsement is sufficient to satisfy Rule 5A:18 only if "the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection." Mackie v. Hill, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993).

Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 927 (2000).

- 4 -

Notwithstanding mother's failure to specify a basis for her challenge to the trial court's decision, we recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dept. of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)), and therefore consider whether there exists a principled basis for suspending Rule 5A:18 under the good cause or ends-of-justice exceptions.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. Where the trial judge hears the evidence *ore tenus,* his decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe, 231 Va. at 282, 343 S.E.2d at 73.

A termination of parental rights pursuant to Code § 16.1-283(C)(2) requires the trial court to find by clear and convincing evidence that termination was in the child's best interests and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In determining what is in the best interests of a child,

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Despite the weighty significance of termination, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (citation omitted).

"In order to avail oneself of the [good cause or ends of justice] exception [to Rule 5A:18], a [litigant] *must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (emphasis added). Here, the record falls far short of affirmatively demonstrating a miscarriage of justice. Code § 16.1-283 provides for the termination of parental rights when parents are "unwilling or unable within a reasonable period of time *not to exceed twelve months* from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement . . . ." Code § 16.1-283(C)(2) (emphasis added).

The child was removed in February 2009 and remained in foster care continuously while SVDSS provided services to mother. By the time of the May 2011 hearing, the child had been in foster care for over two years. The evidence showed that mother suffered from abnormal personality traits that would not change over time, and from February 2009 until June 2010, although mother met with a therapist numerous times, she made little, if any, progress. Mother

exhibited poor parenting skills during supervised visitations, at times appearing emotionally distraught. In addition, mother was dismissed from psychological treatment for noncompliance and poor behavior, and she failed to participate in DRS services despite two referrals in 2009. Furthermore, mother failed to maintain steady employment, and despite having a regular residence, the environment was unstable due to mother's volatile relationship with her boyfriend.

The record supports the circuit court's findings that SVDSS offered reasonable services, that mother failed to timely remedy the conditions that led to the removal of the child, that clear and convincing evidence proved mother's parental rights should be terminated pursuant to Code § 16.1-283(C)(2), and that the termination of her parental rights was in the child's best interests.

Accordingly, we summarily affirm the judgment of the trial court.

<u>Affirmed.</u>